**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

SNEAKER MATCH, LLC,
an Arizona Limited Liability Company,

      Plaintiff,                                Case No.:

         v.

JOHN DOES 1-10,

      Defendants.

_____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

For this Complaint and Demand for Jury Trial in this matter, Plaintiff Sneaker Match, LLC,

by and through its attorneys Revision Legal, PLLC, states as follows:

**PARTIES**

1.     Plaintiff Sneaker Match, LLC ("Sneaker Match") is an Arizona Limited Liability

Company.

2.     Upon information and belief, Defendants John Does 1-10 ("Defendants") are

residents of Vietnam, China, or other countries in southeast Asia.

**JURISDICTION AND VENUE**

3.     This Court has original subject matter jurisdiction over the claims in this action

pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., the Copyright Act 17

U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

4.     Personal jurisdiction is proper over Defendants because exercise thereof would not

offend traditional notions of fair play or substantial justice because Defendants have purposefully

availed themselves of this forum state, the cause of action arises from Defendants' activities here, and the Defendants' actions have caused damage to Sneaker Match in the state of Illinois.

5. Specifically, Defendants purposefully and intentionally availed themselves of this forum state by manufacturing, importing, distributing, offering for sale, displaying, advertising, and selling counterfeit goods bearing Sneaker Match's creative works, by manufacturing, importing, distributing, offering for sale, displaying, advertising, and selling counterfeit goods bearing Sneaker Match's trademark, by creating and operating interactive websites that reveal specifically intended interactions with residents of the State of Illinois, and by creating and running social media and Google advertisements selling counterfeit goods specifically to residents of the State of Illinois.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores operating under several aliases. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more aliases identified in Schedule A attached hereto at **Exhibit 4** ("Aliases"). They offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Sneaker Match's federally registered trademarks, copyrighted designs, or both to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Sneaker Match substantial injury in the State of Illinois.

STATEMENT OF FACTS

**Introduction**

7.      This action has been filed by Sneaker Match to combat e-commerce store operators who trade upon Sneaker Match's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, using infringing and counterfeit versions of Sneaker Match's federally registered trademarks and copies of Sneaker Match's federally registered copyright protected Works (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Aliases share unique identifiers, which establishes a logical relationship between them and establishes that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operations. Sneaker Match is forced to file this action to combat Defendants' counterfeiting of the registered trademarks and copyrights, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Sneaker Match has been and continues to be irreparably damaged through infringement of its valuable trademarks and copyrights as a result of Defendants' actions and seeks injunctive and monetary relief.

**Plaintiff's Business**

8.      Sneaker Match began in June of 2014 based on the unique business concept of selling t-shirts customized to coordinate with popular sneakers online via the www.sneakermatchtees.com website.

9.     The Sneaker Match business model has been a wild success. Sneaker Match has sold products including t-shirts, sweatshirts, hats, and recently, face masks, on its website throughout the United States and internationally via its online retail store services.

10.     The Sneaker Match business has grown based on its online presence and reputation. The majority of Sneaker Match's site traffic is a result of organic search traffic as opposed to paid advertising.

11.     Sneaker Match is a global business with online retail services via a state-of-the-art website and marketing and advertising online across social media channels.

**Plaintiff's Registered Trademarks**

12.     Sneaker Match has taken significant steps to protect and register its trademark rights with the United States Patent and Trademark Office ("USPTO") as follows:

| Registration Number | Trademark | Registration Date | Goods/Services |
|---|---|---|---|
| 5,010,674 | SNEAKER MATCH TEES | August 2, 2016 | On-line retail store services featuring apparel, footwear, watches, wallets, hats, messenger bags, backpacks, bandanas, underwear, belts, printed matter, toys, jewelry, sunglasses, and accessories; Retail store services featuring apparel, footwear, watches, wallets, hats, messenger bags, backpacks, bandanas, underwear, belts, printed matter, toys, jewelry, sunglasses, and accessories. |

| | | | |
|---|---|---|---|
| 5,784,852 | SNEAKER MATCH | June 25, 2019 | On-line retail store services featuring apparel, footwear, watches, wallets, hats, messenger bags, backpacks, bandanas, underwear, belts, printed matter, toys, jewelry, sunglasses, and accessories; Retail store services featuring apparel, footwear, watches, wallets, hats, messenger bags, backpacks, bandanas, underwear, belts, printed matter, toys, jewelry, sunglasses, and accessories; Retail stores featuring apparel, footwear, watches, wallets, hats, messenger bags, backpacks, bandanas, underwear, belts, printed matter, toys, jewelry, sunglasses, and accessories |

| 6,345,104 | SNEAKER MATCH DESIGN MARK<br><br> The color(s) black, white, and red is/are claimed as a feature of the mark. The mark consists of word "SNEAKER" in white bold uppercase lettering. with the word "SNEAKER" located vertically aligned above the word "MATCH" and the word "TEES". The Word "SNEAKER" has the combined horizontal width of words "MATCH TEES". Word "MATCH" is in white light uppercase font centered inside a RED Rectangle box. The word "Tees" is in white uppercase bold lettering. Mark includes a black solid background and reads "**SNEAKER MATCH TEES**" from top to bottom and left to right. | 11 May, 2021 | On-line retail store services featuring apparel, t-shirts, hoodies, Hats, and accessories. |
|---|---|---|---|

13.     Sneaker Match has used the marks above (collectively the "Sneaker Match Marks") continuously and exclusively on online retail store services as well as goods including apparel since at least as early as June 2014.

14.     Examples of how Plaintiff uses the Sneaker Match Marks are depicted below:

*Plaintiff's Website Header:*



*Product Listing Image and example of Hang Tag use:*



*Website Product Listing Description (highlighting added):*



15. Sneaker Match has expended significant efforts and sums in developing the Sneaker Match brand, business, and advertising under the Sneaker Match Marks.

16. As a result of Sneaker Match's consistent, continuous, and exclusive use of the Sneaker Match Marks in commerce, the marks have become well and favorably known across the United States and internationally and Sneaker Match has obtained common law trademark rights in and to the Sneaker Match Marks.

**Plaintiff's Registered Copyrights**

17. Sneaker Match owns several US Copyright Registrations for its unique designs that it makes available for sale on its website ("Sneaker Match Works"):

a. Sneaker Match owns US Copyright Registration no. VA0002200361 for the work titled "Misfit Teddy." A reproduction of that work is depicted below:



b.     Sneaker Match owns US Copyright Registration no. VA0002200728for the work titled "Young & Heartless Bear." A reproduction of that work is depicted below:



c.     Sneaker Match owns US Copyright Registration no. VA0002222471 for the work titled "Misunderstood Bear." A reproduction of that work is depicted below:



d.     Sneaker Match owns US Copyright Registration no. VA0002232119 for the work titled "Misunderstood Bunny." A reproduction of that work is depicted below:



e.     Sneaker Match owns US Copyright Registration no. VA0002221799 for the work titled "Misunderstood Monkey" A reproduction of that work is depicted below:



f.     Sneaker Match owns US Copyright Registration no. VA0002226336 for the work titled "Misunderstood Puppy." A reproduction of that work is depicted below:



g.     Sneaker Match owns US Copyright Registration no. VA0002230668 for the work titled "Misunderstood Rhino." A reproduction of that work is depicted below:



h.     Sneaker Match owns US Copyright Registration no. VA0002221669 for the work titled "Misunderstood Tiger." A reproduction of that work is depicted below:



i.     Sneaker Match owns US Copyright Registration no. VA0002222472 for the work titled "Voodoo Sneaker Bear." A reproduction of that work is depicted below:



j.     Sneaker Match owns US Copyright Registration no. VA0002231696 for the work titled "Heartless Bear." A reproduction of that work is depicted below:



**Defendants' Infringing Businesses**

18.     The success of the Sneaker Match business has resulted in rampant counterfeiting and infringement. Sneaker Match has put forth a concerted effort to combat the counterfeiting activities complained of herein. The Sneaker Match anti-counterfeiting efforts include investigating suspicious e-commerce stores identified via proactive review of online sales and advertising activity. Sneaker Match has identified numerous e-commerce stores including those operating under the Aliases, which were and currently are offering for sale and/or selling Counterfeit Products to consumers in this Judicial District and throughout the United States. Ecommerce sales, including sales via Defendants' stores, have resulted in a sharp increase in the importation of unauthorized products into the United States. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). Over 85% of CBP seizures originated from mainland China and Hong Kong. Counterfeit and pirated product account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. **Exhibit 1**, Excerpts from Fiscal year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report.

19.     Ecommerce service providers, like those used by Defendants to support their online retail websites, do not subject sellers to adequate identity verification and confirmation procedures. This allows counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 2**, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 3**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" be used "to reduce the risk of counterfeits entering the e-commerce stream." Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 3** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 3** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 2** at pp. 186–187.

20.     Defendants John Does 1-10, identified by their Aliases at **Exhibit 4** ("Defendants"), are online retailers of clothing goods, including t-shirts, sweatshirts, and masks sold to coordinate with various famous shoes. They have targeted online sales to Illinois residents by setting up and operating ecommerce stores using the Aliases, offered shipping to the United States, including Illinois, accepted payment in U.S. dollars and, on information and belief, have sold Counterfeit Products to residents of Illinois.

21.     Upon information and belief, Defendants are residents of Vietnam, China, or other countries in southeast Asia who operate under a scheme of common ownership and control to create numerous online retail stores under false names and payment accounts to sell clothing products and offer online retail services under a false indication of origin.

22.     Upon information and belief, Defendants also own and operate websites, run online advertisements, run social media accounts, and own and operate seller accounts on popular marketplaces such as Esty, eBay, and Amazon.

23.     Defendants have created e-commerce stores under a variety of names through popular e-commerce platforms and then advertise products directly to United States residents through social media platforms such as Facebook.

24.     Defendants spend significant time, effort, and funds to run targeted advertisements geared toward United States consumers including Illinois residents on social media including Facebook and Instagram as well as via Google Ads.

**Defendants' Willful Trademark Infringement**

25.     Plaintiff's investigation of Defendants' online stores revealed that, on the tails of Plaintiff's success, Defendants have co-opted the Sneaker Match Marks. Defendants use the Sneaker Match Marks directly on their website, in product listing descriptions, on product images in marketing, and as keywords in advertising and indexing.

26.     Examples of Defendants' use of the Sneaker Match Marks appear below:





Gatorade 6s Green Sneaker tees Turn up - Sneakers Match Tee Shirts

$24.99

Size: S

S  M  L  XL  2XL  3XL  4XL  5XL

Quantity

−  1  +

ADD TO CART

BUY NOW



27.     Defendants use the Sneaker Match Marks to promote and sell counterfeit goods to customers online.

28.     Many Defendants also deceive unknowing consumers by using the Sneaker Match Marks without authorization within the content, text, and/or meta tags of their e-commerce stores

in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Sneaker Match Products. Other e-commerce stores operating under the Aliases omit using Sneaker Match Marks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Sneaker Match Products.

29.     When a United States-based customer purchases one of these clothing items from Defendants, and if the customers are lucky, Defendants send a request to print the stolen images on low-quality clothing products and then ship them to the customer. However, in many cases Defendants send nothing at all.

30.     Defendants have often posted wholesale copies of Plaintiff's website product listings and new collections on their own retail websites; often adding Plaintiff's newly released listings within days of each release.

31.     Defendants often publish an exact copy of Plaintiff's entire listings including Plaintiff's product descriptions and copy and Plaintiff's product images containing Plaintiff's t-shirt/sneaker match design showing Plaintiff's t-shirt hang tag bearing the Sneaker Match Marks. At times Defendants even fail to remove links from the listings that still route back to Plaintiff's website.

32.     Some Defendants slightly alter some of the copy, trademarks, or other aspects of the listing, but the copying and likelihood of confusion is obvious and intentional.

33.     Defendants' minimal changes to Plaintiff's Sneaker Match Marks are insufficient to avoid trademark infringement liability because the marks are nearly identical, used on exactly the same products, sold in the same stream of commerce, advertised to the same customers, and the infringement is intentional.

34.     Defendants' use of the exact or substantially similar marks to the Sneaker Match Marks on the same goods and services sold in the same stream of commerce to every-day consumers is highly likely to cause confusion as to the origin of the goods and services among consumers.

35.     After investigating these stores further, Sneaker Match found commonalities between the sellers.

36.     The sellers used the same or similar website templates, most had direct copies or edited copies of Sneaker Match's website product photos containing the Sneaker Match Marks, and many sellers also often copied Sneaker Match's red, black, and white trade dress.

37.     Defendants use privacy services such as Cloudflare and BigCommerce to hide their identities and avoid identification in association with the infringing domains.

38.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Aliases look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal. E-commerce stores operating under the Aliases often include content and images that make it very difficult for consumers to distinguish such stores from the genuine Sneaker Match store. Sneaker Match has not licensed or authorized Defendants to use the Sneaker Match Marks, and none of the Defendants are authorized retailers of genuine Sneaker Match Products.

**Defendants' Willful Copyright Infringement**

39.     In addition to trading on Plaintiff's Sneaker Match Marks, Defendants also sell shirts bearing exact copies of Plaintiff's copyrighted works.

40.     Defendants had access to Plaintiff's works via his online store which is published and available to anyone with internet access.

41.     Upon information and belief, Defendants accessed Plaintiff's works directly from its website and copied entire product listings including the descriptions of the products, links within the descriptions and the images containing the works themselves.

42.     When a customer places an order via Defendants' online store, if Defendants decide to fill the order, they print the selected works on low-quality t-shirts, often overseas, and ship the counterfeit products into the United States to the customer.

43.     Examples of Defendants' infringement of Plaintiffs' Works are displayed below:





9/2/2021                    Travis Scott 6s British Khaki matching shirt collection_22637343 - Lovellux







## TRAVIS SCOTT 6S BRITISH KHAKI MATCHING SHIRT COLLECTION

$19.99

Size: S

| S | M | L | XL | 2XL | 3XL | 4XL | 5XL |

🔥 7971 items left in stock

Quantity

| 1 | BUY NOW |

**Frequently bought together**



https://www.lovellux.com/products/travis-scott-6s-british-khaki-matching-shirt-collection22637343?variant=1000005047286622&gclid=Cj0KCQjw7MGJBhD-ARIs…    1/4

23

Travis Scott 6s British Khaki matching shirt collection_22637343 - Lovellux



☑ Travis Scott 6s British Khaki matching shirt collection

THIS ITEM

$19.99

Classic T-S ▾

☑ Travis Scott 6s British Khaki matching shirt collection

$19.99

Classic T-S ▾

☑ Last shot 14 matching shirt - Last Shot 14 Collection

$19.99

Classic T-S ▾

TOTAL PRICE: $59.97

Guaranteed SAFE Checkout



[ f Share ] [ 🐦 Tweet ] [ 📌 Pin it ]

DESCRIPTION ▲

## JAY THE SNEAKER GUY X SNEAKER MATCH ® COLLECTION

### JORDAN 6 TRAVIS SCOTT BRITISH KHAKI LIMITED RELEASE

Jay The Sneaker Guy x Sneaker Match ® Swapped tee to match the Jordan 6 Travis Scott British Khaki.

- Limited run of 100 tees
- True to size Mens t-shirt
- 100% Soft Cotton
- Medium Weight
- Regular Fit

<BACK TO COLLECTION

The "Swapped Script" Shirt was designed to match the Travis Scott 6s British Khaki. This design is exclusive to Sneaker Match Tees Online shop. Complete your Sneaker outfit with this exclusive design.

Sneaker Match Tees is the #1 Online Sneaker clothing and apparel store for the hottest sneaker brands. Including Jordan, Yeezy, Nike Air Max, Kyrie and more. Got em? Now Match EM with our vast selection of shirts, sneaker tees, hoodies, and crew necks designed for the latest sneaker release.

RETURN & WARRANTY ▲

- **100% Secure payment** with SSL Encryption.
- If you're not **100% satisfied**, let us know and we'll make it right.

SHIPPING POLICIES ▲

- Orders ship within **5 to 10 business days.**

https://www.lovellux.com/products/travis-scott-6s-british-khaki-matching-shirt-collection22637343?variant=1000005047286622&gclid=Cj0KCQjw7MGJBhD-ARIs...    2/4

## Injury to Plaintiff and Consumers

44. Defendants' actions described above have damaged and irreparably harmed Sneaker Match.

45. Consumers have already been confused due to Defendants' use of Plaintiff's trademarks and copyrighted designs. Plaintiff has received contacts from confused consumers via its customer service line with complaints regarding orders they intended to place with Sneaker Match but were actually placed via Defendants' websites.

46. If allowed to continue advertising and providing retail store services and online retail store services under the Sneaker Match Marks, Defendants will further damage and injure Sneaker Match's reputation and the goodwill associated with the Sneaker Match Marks, which are well-known to the relevant consumers as source identifiers for high-quality services.

47. If allowed to continue advertising and offering products and services under the Sneaker Match Marks, Defendants will continue to create significant likelihood of consumer confusion that will irreparably harm the public and its interest in being free from confusion.

48. Sneaker Match has no adequate remedy at law.

49. Defendants knew or should have known that its activities described above constitute trademark infringement, trade dress infringement, copyright infringement, and unfair competition.

50. Defendants acted knowingly and willfully in reckless disregard for Sneaker Match's rights.

51. Defendants intentionally monitored Plaintiff's website for new product listings and directly copied and pasted Plaintiff's listings onto their own websites.

## FIRST CLAIM FOR RELIEF
### Trademark Counterfeiting and Infringement
### Under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

52.     Sneaker Match restates all prior paragraphs as if fully restated herein.

53.     Defendants have used spurious designations that are identical to or substantially indistinguishable from the Sneaker Match Marks on goods covered by registrations for the Sneaker Match Marks.

54.     Defendants' actions as described above are likely to cause confusion mistake or deception as to the origin, sponsorship, or approval of Defendants' products and commercial activities, and therefore constitute trademark infringement, false designation of origin, counterfeiting, and unfair competition in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

55.     Defendants' actions described above have, at all times relevant to this action, been willful.

56.     As a foreseeable, direct, and proximate cause of Defendants' above-described actions, Sneaker match and consumers have been and will continue being irreparably damaged.

57.     Sneaker Match has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### Trademark Infringement
### Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)

58.     Sneaker Match restates all prior paragraphs as if fully restated herein.

59.     Defendants' actions as described above are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendants' products and commercial activities, and therefore constitute trademark infringement, false designation of origin, and unfair competition in violation of § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

60. Defendants' actions described above have, at all times relevant to this action, been willful.

61. As a foreseeable, direct, and proximate cause of Defendants' above-described actions, Sneaker Match and consumers have been and will continue being irreparably damaged.

62. Sneaker Match has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**
**Copyright Infringement**
**Under 17 U.S.C. §§ 106 AND 501**

63. Sneaker Match incorporates all foregoing paragraphs as if fully restated herein.

64. Sneaker Match also owns a copyright registration for the following works:

a.     Misfit Teddy, US Copyright Registration no. VA0002200361;

b.     Young & Heartless Bear, US Copyright Registration no. VA0002200728;

c.     Misunderstood Bear, US Copyright Registration no. VA0002222471;

d.     Misunderstood Bunny, US Copyright Registration no. VA0002232119

e.     Misunderstood Monkey, US Copyright Registration no. VA0002221799

f.     Misunderstood Puppy, US Copyright Registration no. VA0002226336

g.     Misunderstood Rhino, US Copyright Registration no. VA0002230668

h.     Misunderstood Tiger, US Copyright Registration no. VA0002221669

i.     Voodoo Sneaker Bear, US Copyright Registration no. VA0002222472

j.     Heartless Bear, US Copyright Registration no. VA0002231696

65. Sneaker Match's Works are widely disseminated via its own website and social media accounts, and on physical products.

66. Defendants had access to Sneaker Match's Works.

67.     Defendants downloaded Sneaker Match's Works from the Sneaker Match website for use in their infringement scheme.

68.     Defendants have reproduced, prepared derivative works of, distributed copies of, imported into the US, and displayed publicly works that are identical copies of, and substantially similar to, Sneaker Match's Works.

69.     As a result of Defendants' infringement, Sneaker Match has suffered monetary damages.

70.     Sneaker Match is entitled to the recovery of, at its election, statutory damages, actual damages, Defendants' profits, and the costs of this action.

71.     Sneaker Match is also entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502 and 17 U.S.C § 106.

72.     Sneaker Match is also entitled its attorneys' fees pursuant to 17 U.S.C. § 505 and 17 U.S.C § 106.

## PRAYER FOR RELIEF

Sneaker Match respectfully requests that the Court enter the following judgment against Defendants:

1.  That the Court preliminarily and permanently enjoin and restrain Defendants, as well as their heirs, successors, assigns, officers, agents, and employees from:

    a.  Reproducing, preparing derivative works of, distributing copies of, and displaying publicly Plaintiff Sneaker Match's Works;

    b.  Manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing Plaintiff Sneaker Match's trademarks or any confusingly similar trademark; and

c.  Aiding or assisting any other third party in subsections (a) and (b) above;

2.  That the Court award Sneaker Match, at his election, his actual damages, lost profits, consequential damages, exemplary damages, statutory damages, and any other damages allowable under law;

3.  That the Court enter an order of all available equitable relief, including but not limited to, an accounting;

4.  That the Court award Sneaker Match costs and attorneys' fees, and;

5.  That the Court award Sneaker Match any other relief to which he is entitled.

Respectfully submitted,

Sneaker Match, LLC

November 5, 2021

/s/ Eric Misterovich
Eric Misterovich (P73422)
Revision Legal, PLLC
444 Cass St., Suite D
Traverse City, MI 49684
(231) 714-0100
(231) 714-0200 (f)
eric@revisionlegal.com
john@revisionlegal.com
*Attorneys for Plaintiff*

## <u>JURY DEMAND</u>

Plaintiff hereby requests a trial by jury for all eligible counts contained within this

Complaint.

Respectfully submitted,

Date: November 5, 2021                    Sneaker Match, LLC

<u>/s/ Eric Misterovich</u>
Eric Misterovich (P73422)
Revision Legal, PLLC
444 Cass St., Suite D
Traverse City, MI 49684
(231) 714-0100
(231) 714-0200 (f)
eric@revisionlegal.com
john@revisionlegal.com
*Attorneys for Plaintiff*